**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE**

| | |
|---|---|
| DEER PARK GLYCINE, LLC, <br><br> PLAINTIFF, <br><br> V. <br><br> UNITED STATES, <br><br> DEFENDANT. | **COURT NO. 23-00238** <br><br> **PUBLIC DOCUMENT** |

**PLAINTIFF DEER PARK GLYCINE, LLC'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Plaintiff Deer Park Glycine, LLC ("DPG") moves for judgment on the agency record under the United States Court of International Trade Rule 56.2.

Plaintiff's case challenges the October 11, 2023 negative scope ruling of the U.S. Department of Commerce (the "Department" or "Commerce") pursuant to the anti-dumping and countervailing duty orders on glycine — *i.e.*, *Glycine from India* (A-533-883 / C-533-884), *Japan* (A-588-878), *Thailand* (A-549-837), and *the People's Republic of China* (C-570-081) (collectively, "Orders").  *See Glycine from India and Japan: Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders*, 84 Fed. Reg. 29170 (Dep't of Commerce June 21, 2019); *Glycine from Thailand: Antidumping Duty Order*, 84 Fed. Reg. 55912 (Dep't of Commerce Oct. 18, 2019); and *Glycine from India and the People's Republic of China: Countervailing Duty Orders*, 84 Fed. Reg. 29173 (Dep't of Commerce June 21, 2019).

For the reasons outlined in the accompanying memorandum of points and authorities in support of this motion, Commerce's final scope ruling is not supported by substantial evidence on the record and otherwise is not in accordance with law.

WHEREFORE, Plaintiff requests that this Court enter an Order:  (1) holding Commerce's final scope determination to be unsupported by substantial evidence and otherwise unlawful, and (2) remanding the final scope determination with instructions for Commerce to render a new determination consistent with the Court's opinion.

Respectfully submitted,

/s/ David M. Schwartz
David M. Schwartz
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:  (202) 263-4170
Telefax:     (202) 331-8330
Email:        David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

Dated:  June 6, 2024

PUBLIC DOCUMENT

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEER PARK GLYCINE, LLC,<br><br>     PLAINTIFF,<br><br> v.<br><br>UNITED STATES,<br><br>     DEFENDANT. | COURT NO. 23-00238<br><br>PUBLIC DOCUMENT |

MEMORANDUM OF POINTS AND AUTHORITIES

OF PLAINTIFF IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD

David M. Schwartz
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:   (202) 263-4170
Telefax:        (202) 331-8330
Email:          David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

Dated:  June 6, 2024

PUBLIC DOCUMENT

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT PURSUANT TO RULE 56 ............................................................. 2

    A. THE ADMINISTRATIVE DETERMINATION UNDER REVIEW ...................... 2

    B. ISSUES PRESENTED FOR REVIEW ........................................................... 2

III. STATEMENT OF FACTS ................................................................................... 3

IV. SUMMARY OF THE ARGUMENT ...................................................................... 4

V. JURISDICTION AND STANDARD OF REVIEW ................................................... 5

VI. ARGUMENT .................................................................................................... 6

    A. COMMERCE'S SCOPE RULING IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE ........ 6

    B. COMMERCE'S SCOPE RULING UNLAWFULLY CHANGES THE SCOPE OF THE ORDERS ........ 11

    C. COMMERCE FAILED TO COMPLY WITH ITS OWN REGULATIONS BY FAILING TO CONSIDER OTHER PRIMARY INTERPRETIVE SOURCES ........ 12

VII. CONCLUSION AND PRAYER FOR RELIEF ...................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.L. Patterson, Inc. v. United States*,
   585 Fed. Appx. 778 (Fed. Cir. 2014) ........................................................................5

*ArcelorMittal Stainless Belg. N.V. v. United States*,
   694 F.3d 82 (Fed. Cir. 2012) ...................................................................................8

*CS Wind Vietnam Co. v. United States*,
   832 F.3d 1367 (Fed. Cir. 2016) ..........................................................................5, 6, 9

*Eckstrom Indus., Inc. v. United States*,
   254 F.3d 1068 (Fed. Cir. 2001) ...............................................................................6

*Gerald Metals, Inc. v. United States*,
   132 F.3d 716 (Fed. Cir. 1997) .................................................................................6

*Holford USA Ltd. Inc. v. United States*,
   19 CIT 1486, 912 F. Supp. 555, SLIP OP. 95-209 (1995) ......................................8

*Magnum Magnetics Corp. v. United States*,
   657 F. Supp. 3d 1387 (Ct. of Int'l Trade 2023) ......................................................6

*Meridian Prods., LLC v. United States*,
   851 F.3d 1375 (Fed. Cir. 2017) ...............................................................................6

*NSK Ltd. v. United States*,
   510 F.3d 1375 (Fed. Cir. 2007) ...............................................................................5

*OMG, Inc. v. United States*,
   321 F. Supp. 3d 1262 (Ct. of Int'l Trade 2018) ......................................................8

*Saha Thai Steel Pipe Pub. Co. v. United States*,
   547 F. Supp. 3d 1278 (Ct. of Int'l Trade 2021) ......................................................6

*Star Pipe Prods. v. United States*,
   365 F. Supp. 3d 1277 (Ct. of Int'l Trade 2019) ............................................9, 10, 14

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................................5

22 U.S.C. § 6701(7)(A) .................................................................................................8

28 U.S.C. § 1581(c) ......................................................................................................5

**Regulations**

19 C.F.R. § 351.225(k) ........................................................................ *passim*

19 C.F.R. § 351.225(k)(1)...............................................................................14

19 C.F.R. § 351.225(k)(1)(i)........................................................................7, 13

**Administrative Determinations**

Antidumping and Countervailing Duty Petitions on Glycine from the People's
    Republic of China, India, Japan, and Thailand (March 27, 2018)............................15

*Glycine from China, India, and Japan*, Investigation Nos. 701-TA-603–604 and
    731-TA-1413–1414 (Final), USITC Pub. 4900 (June 2019) ................................. 7, 9, 11, 12

*Glycine From India, Japan, and Korea* Investigation Nos. 731–TA–1111-1113
    (Preliminary), USITC Pub. 3921 (May 2007) ......................................................11

*Glycine from India and Japan: Amended Final Affirmative Antidumping Duty
    Determination and Antidumping Duty Orders*, 84 Fed. Reg. 29170 (Dep't of
    Commerce June 21, 2019) .......................................................................3

*Glycine from India and the People's Republic of China: Countervailing Duty
    Orders*, 84 Fed. Reg. 29173 (Dep't of Commerce June 21, 2019)........................3, 4

*Glycine from the People's Republic of China: Final Partial Affirmative
    Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg.
    73426 (Dep't of Commerce Dec. 10, 2012) ....................................................14, 15

*Glycine from Thailand: Antidumping Duty Order*, 84 Fed. Reg. 55912 (Dep't of
    Commerce Oct. 18, 2019)........................................................................3

Letter from the Department of Commerce to David M. Schwartz, "Petitions for
    the Imposition of Antidumping Duties on Imports of Glycine from India,
    Japan, and Thailand, and Countervailing Duties on Imports from the People's
    Republic of China, India, and Thailand: Supplemental Questions" (April 2,
    2018) ...........................................................................................16

*Regulations to Improve Administration and Enforcement of Antidumping and
    Countervailing Duty Laws*, 86 Fed. Reg. 52300 (Dep't of Commerce Sept. 20,
    2021) ..........................................................................................13, 14

Petitioners' Responses to Supplemental Questions (April 4, 2018)............................16

**Other Authorities**

American Heritage Dictionary of the English Language,
    https://www.ahdictionary.com/word/search.html?q=precursor (last accessed
    on May 16, 2024) .................................................................................................................8

The Merriam-Webster Dictionary,
    https://www.merriam-webster.com/dictionary/precursor (last accessed on May
    16, 2024) ..........................................................................................................................8

## I.    INTRODUCTION

This appeal challenges the October 11, 2023 negative scope ruling ("Scope Ruling") of the U.S. Department of Commerce (the "Department" or "Commerce").  The Scope Ruling is unsupported by substantial evidence on the record and is not in accordance with the law.

The scope of the pertinent antidumping and countervailing duty orders includes "glycine and precursors of dried crystalline glycine that are processed in a third country."  Commerce bases its negative scope ruling on its finding that calcium glycinate is a "precursor of glycine slurry, which is an in-scope glycine product, and … a precursor of dried crystalline glycine."  Commerce's finding is not supported by the administrative record and unlawfully changes the scope of the pertinent Orders.

The record evidence shows that the term "precursors of dried crystalline glycine" was never intended to be limited to glycine slurry, a product that is obtained at the immediately prior stage of dried crystalline glycine.  Instead, the term encompassed all intermediate products that can readily be turned into dried crystalline glycine, including sodium glycinate.  Commerce, however, failed to address in its Scope Ruling analysis the record evidence indicating that calcium glycinate, similar to sodium glycinate, can readily be turned into dried crystalline glycine using an identical processing method.  Commerce's analysis also impermissibly changes the scope of the Orders because the only product that can satisfy Commerce's erroneous interpretation of the term "precursor" is glycine slurry.  That was never the intent of the parties during the original investigation.  Instead, the history of this proceeding, as reflected in various (k)(1) interpretive sources, including the U.S. International Trade Commission's final report during the original investigation, shows that the parties always intended to cover all glycine precursors within the scope of the Orders.

Finally, Commerce's failure to consult other (k)(1)(i) interpretive sources in determining the meaning and scope of the term "precursor," as used in the scope language, is inconsistent with 19 C.F.R. § 351.225(k).  If Commerce had reviewed these primary interpretive sources, Commerce would have recognized that the petitioners were always concerned with the circumvention of the Orders and that the term "precursor," as used in the scope language, intended to cover any and all intermediate products that can easily be turned into dried crystalline glycine.

The Plaintiff respectfully requests that the motion for judgment on the agency record be granted and that judgment be entered in favor of the Plaintiff.

## II.     STATEMENT PURSUANT TO RULE 56

### A.     THE ADMINISTRATIVE DETERMINATION UNDER REVIEW

The administrative determination under review is Commerce's October 11, 2023 determination finding that calcium glycinate is outside the scope of the antidumping and countervailing duty orders on Glycine from India, Japan, Thailand, and the People's Republic of China. P.R. 9.[1]

### B.     ISSUES PRESENTED FOR REVIEW

The Plaintiff presents three issues for this Court's review:

1.  Whether Commerce's Scope Ruling is supported by substantial record evidence;

2.  Whether Commerce's Scope Ruling impermissibly changes the scope of the Orders; and

3.  Whether Commerce's Scope Ruling is plainly erroneous and inconsistent with its own regulations.

---

[1]     References to the Administrative Record will be abbreviated as follows:  The Public Record will be identified as "P.R. __" with the appropriate document number inserted.

**III.    STATEMENT OF FACTS**

In June and October 2019, the U.S. Department of Commerce (Commerce) published

the antidumping and countervailing duty orders on glycine — *i.e.*, *Glycine from India*

(A-533-883 / C-533-884), *Japan* (A-588-878), *Thailand* (A-549-837), and *the People's Republic*

*of China* (C-570-081) (collectively, "Orders").  *See Glycine from India and Japan: Amended*

*Final Affirmative Antidumping Duty Determination and Antidumping Duty Orders*, 84 Fed. Reg.

29170 (Dep't of Commerce June 21, 2019); *Glycine from Thailand: Antidumping Duty Order*,

84 Fed. Reg. 55912 (Dep't of Commerce Oct. 18, 2019); and *Glycine from India and the*

*People's Republic of China: Countervailing Duty Orders*, 84 Fed. Reg. 29173 (Dep't of

Commerce June 21, 2019).

The subject merchandise covered by these Orders, as described in the scope, is glycine at

any purity level or grade, including, but not limited to, all forms of crude or technical glycine,

sodium glycinate, glycine slurry and any other forms of amino acetic acid or glycine.  Subject

merchandise also covers glycine and precursors of dried crystalline glycine that are processed in

a third country, including, but not limited to, refining or any other processing that would not

otherwise remove the merchandise from the scope of these Orders if performed in the country of

manufacture of the in-scope glycine or precursors of dried crystalline glycine.

On August 14, 2023, the Plaintiff filed a scope ruling application ("August 2023 Scope

Ruling Application") asking Commerce to determine that calcium glycinate is covered by

the scope of the Orders.  *See* P.R. 1.  In its August 2023 Scope Ruling Application, the Plaintiff

explained that calcium glycinate can be used as a precursor of glycine when it is deconstructed

using sulfuric acid.  *Id.* at Exhibit 6.  When used in glycine production, the Plaintiff explained,

calcium glycinate is a precursor of dried crystalline glycine and thus should be treated within

the scope of the Orders. *Id.* The Plaintiff provided evidence showing that calcium glycinate is indeed being used by certain foreign manufacturers as a glycine precursor. *Id.* at Exhibit 2.

On October 11, 2023, Commerce issued its final Scope Ruling on calcium glycinate. *See* P.R. 9. After reviewing the Plaintiff's August 2023 Scope Ruling Application, Commerce found that "{c}alcium glycinate is a precursor of glycine slurry, which is an in-scope glycine product, and glycine slurry is a precursor of dried crystalline glycine." *Id.* As a result, Commerce concluded that calcium glycinate is not a precursor of dried crystalline glycine and is not covered by the scope of the Orders.

**IV.    S****UMMARY OF THE**** A****RGUMENT**

Commerce's Scope Ruling is unsupported by substantial evidence, impermissibly changes the scope of the Orders, and is otherwise inconsistent with its own regulations.

Commerce's finding that calcium glycinate is outside the scope of the orders because it is a precursor of glycine slurry, which is a precursor of dried crystalline glycine, is unsupported by substantial evidence. Commerce failed to address record evidence indicating that sodium glycinate was also understood to be a precursor of dried crystalline glycine during the original investigation. The record evidence indicated that the processing required to convert sodium glycinate to dried crystalline glycine is identical to the processing required to convert calcium glycinate to dried crystalline glycine. As a result, Commerce's Scope Ruling analysis fails to satisfy the Court's substantial evidence standard because it did not address record evidence that clearly detracts from Commerce's conclusion that calcium glycinate is not within the scope of the Orders because it is a precursor of glycine slurry, which is a precursor of dried crystalline glycine.

Commerce's Scope Ruling analysis also impermissibly changes the scope of the orders because it limits the scope to various glycine grades and glycine slurry only. Glycine slurry is the product obtained at the immediately prior stage of dried crystalline glycine in all methods of glycine production. Inadvertently, Commerce's analysis impermissibly excludes sodium glycinate and other glycine precursors from the explicit scope language of the Orders. Further, the history of this proceeding, as reflected in various (k)(1)(i) interpretive sources, including the U.S. International Trade Commission's final report during the original investigation, shows that the parties always intended to cover all glycine precursors within the scope of the Orders.

Commerce's failure to consult other (k)(1)(i) interpretive sources in determining the meaning and scope of the term "precursor," as used in the scope language, is inconsistent with 19 C.F.R. § 351.225(k). If Commerce reviewed these primary interpretive sources, Commerce would have recognized that the petitioners were always concerned with the circum-vention of the Orders and that the term "precursor," as used in the scope language, intended to cover any intermediate product that can easily be turned into dried crystalline glycine.

V.    **JURISDICTION AND STANDARD OF REVIEW**

This court has jurisdiction pursuant to 28 U.S.C. § 1581(c). Under Section 516A(b)(1)(B)(i) of the Tariff Act of 1930, as amended, the court will sustain a decision by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also NSK Ltd. v. United States*, 510 F.3d 1375, 1379 (Fed. Cir. 2007). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *A.L. Patterson, Inc. v. United States*, 585 Fed. Appx. 778, 781–82 (Fed. Cir. 2014). Commerce may not disregard record evidence that detracts from its intended conclusion. *See, e.g., CS Wind Vietnam Co.*

*v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) ("The substantiality of evidence must take

into account whatever in the record fairly detracts from its weight.") (quoting *Gerald Metals,*

*Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997))).

This Court reviews the questions of whether "the unambiguous terms of a scope control

the inquiry, or whether some ambiguity exists" *de novo*. *See Magnum Magnetics Corp. v.*

*United States*, 657 F. Supp. 3d 1387, 1391 (Ct. of Int'l Trade 2023) (quoting *Meridian Prods.,*

*LLC v. United States*, 851 F.3d 1375, 1382 (Fed. Cir. 2017).

Although this Court defers to Commerce's interpretation of its orders, Commerce cannot

change the scope of the order or "interpret an order in a manner contrary to its terms." *See Saha*

*Thai Steel Pipe Pub. Co. v. United States*, 547 F. Supp. 3d 1278, 1291 (Ct. of Int'l Trade 2021)

(quoting *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001)).

## VI.   ARGUMENT

### A.   COMMERCE'S SCOPE RULING IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE

The relevant language of the scope at issue in this appeal states:

> The merchandise covered by these Orders is glycine at any purity
> level or grade.  This includes glycine of all purity levels, which
> covers all forms of crude or technical glycine including, but not
> limited to, sodium glycinate, glycine slurry and any other forms of
> amino acetic acid or glycine.  Subject merchandise also includes
> glycine and precursors of dried crystalline glycine that are
> processed in a third country, including, but not limited to, refining
> or any other processing that would not otherwise remove
> the merchandise from the scope of these Orders if performed in
> the country of manufacture of the in-scope glycine or precursors of
> dried crystalline glycine.

Because the scope of the Orders does not define the term "precursor," the plain language

of the scope is not dispositive to determine whether a product can be deemed a precursor of dried

crystalline glycine.  In the Scope Ruling, Commerce determined that glycine slurry, which

Commerce described as "glycine in non-crystalline form," is a precursor of dried crystalline glycine. *See* P.R. 9.  In making this finding regarding glycine slurry, Commerce relied on a footnote in the final report of the U.S. International Trade Commission ("USITC") during the original investigation, which states:

> The scope of this proceeding also covers precursors of dried crystalline glycine, **including, but not limited to**, **glycine slurry** (i.e. glycine in a non-crystallized form), **sodium glycinate** and **a non-reacted ammonia-monochloroacetic or chloroacetic acid mix**.

*See Glycine from China, India, and Japan*, Investigation Nos. 701-TA-603–604 and 731-TA-1413–1414 (Final), USITC Pub. 4900 (June 2019) ("USITC Pub. 4900"), at IV-1, n. 4.

In the Scope Ruling, Commerce first found that the "production of glycine from calcium glycinate begins with turning calcium glycinate into wet glycine slurry and subsequently drying it into a crystallized form." P.R. 9.  Then, Commerce determined that calcium glycinate is not covered by the scope of the Orders because "calcium glycinate is a precursor of glycine slurry, which is an in-scope glycine product, and glycine slurry is a precursor of dried crystalline glycine." *See* P.R. 9.  Commerce reasoned that, because calcium glycinate is treated with sulfuric acid to obtain glycine slurry, which is then dried to obtain dried crystalline glycine, calcium glycinate cannot be a "precursor of dried crystalline glycine." *Id.*

Commerce's analysis cannot withstand this Court's substantial evidence standard because it unreasonably limits the meaning of the term "precursor" to glycine slurry.  The plain meaning of the term, when read together with the descriptions in the primary interpretive sources identified in 19 U.S.C. § 351.225(k)(1)(i), does not permit Commerce's reading of the scope of the pertinent Orders.

"In determining the common meaning of a term, courts may and do consult dictionaries, scientific authorities, and other reliable sources of information, including testimony of record." *OMG, Inc. v. United States*, 321 F. Supp. 3d 1262, 1268 (Ct. of Int'l Trade 2018) (quoting *Holford USA Ltd. Inc. v. United States*, 19 CIT 1486, 1493–94, 912 F. Supp. 555, 561, SLIP OP. 95-209 (1995)).  Further, "{b}ecause the primary purpose of an antidumping order is to place foreign exporters on notice of what merchandise is subject to duties, the terms of an order should be consistent, to the extent possible, with trade usage." *Id.* (quoting *ArcelorMittal Stainless Belg. N.V. v. United States*, 694 F.3d 82, 88 (Fed. Cir. 2012)).

The term "precursor" is defined by the American Heritage Dictionary of the English Language as, *inter alia*, "{a} biochemical substance, such as an intermediate compound in a chain of enzymatic reactions, from which a more stable or definitive product is formed: a precursor of insulin." *See* https://www.ahdictionary.com/word/search.html?q=precursor (last accessed on May 16, 2024).  The Merriam-Webster Dictionary defines the term "precursor" as, *inter alia*, "a substance, cell, or cellular component from which another substance, cell, or cellular component is formed." *See* https://www.merriam-webster.com/dictionary/precursor (last accessed on May 16, 2024).  Chemical Weapons Convention Implementation Act of 1998, codified at 22 U.S.C. § 6701 *et seq.*, defines the term "precursor" as "any chemical reactant which takes part at any stage in the production by whatever method of a toxic chemical."  *See* 22 U.S.C. § 6701(7)(A).  Calcium glycinate, which already contains glycine in its chemical formula and is reacted with only sulfuric acid to "deconstruct" the calcium glycinate and obtain glycine, is clearly covered by these definitions when it is used in glycine production.

Conveniently, Commerce disregarded the descriptions of the product in the USITC's final report from the original investigation of the Orders.  The USITC explicitly stated that

glycine slurry, sodium glycinate and a non-reacted ammonia-monochloroacetic or chloroacetic

acid mix are all encompassed by the term "precursors of dried crystalline glycine." *See* USITC

Pub. 4900 at IV-1, n. 4.  In the same final report, the USITC described the production method of

glycine using sodium glycinate as follows:

> The HCN process uses hydrogen cyanide and formaldehyde
> ($CH_2O$) as the primary starting materials.  These chemicals are
> mixed with aqueous ammonia ($NH_4OH$) in the first reaction step
> of the process.  The reaction product from this first step is then
> reacted with caustic soda ($NaOH$) to produce sodium glycinate.
> **Glycine is produced when an acid, such as sulfuric acid, is**
> **mixed with sodium glycinate.  The glycine solution then goes**
> **through one or more crystallization and filtration steps to**
> **produce a pure white glycine powder.**

*See* USITC Pub. 4900 at I-16 (emphasis added).  As the Plaintiff explained in its August

2023 Scope Ruling Application, the production of glycine from calcium glycinate involves

the following steps:

> Producing glycine from calcium glycinate requires that the calcium
> glycinate first be dissolved in water.  The resulting solution is then
> **treated with sulfuric acid to form glycine**, which remains in
> solution, and the precipitate calcium sulfate.  The calcium sulfate is
> filtered from the solution.  **The remaining filtrate is then**
> **crystallized to recover the glycine as wet cake and dried**.
> Manufacturing equipment necessary to produce glycine from
> {monochloroacetic acid} and sodium glycinate, i.e., reactor,
> crystallizer, filters and dryer, are the same manufacturing
> equipment needed to manufacture glycine from calcium glycinate.

*See* P.R. 1 at Exhibit 6 (emphasis added).  In short, dried crystalline glycine can be

obtained from both sodium glycinate and calcium glycinate using the same production process.

The precursor (sodium glycinate or calcium glycinate) is treated with sulfuric acid first to obtain

glycine slurry.  Then, the wet glycine is filtered and dried to obtain dried crystalline glycine.

Commerce, however, failed to address this similarity in its Scope Ruling analysis

concerning calcium glycinate.  Commerce may not disregard record evidence that detracts from

-9-

its intended conclusion.  *See, e.g., CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.")  In *Star Pipe Prods.  v. United States*, this Court remanded Commerce's scope ruling concerning the antidumping duty order on *Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China* after finding that Commerce failed to address record evidence detracting from its conclusion that Star Pipe's flanges are covered by the scope of the order.  *Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277, 1283 (Ct. of Int'l Trade 2019)  Similar to the issue here, the Court specifically found that Commerce relied on certain language in the USITC report to determine that flanges are within the scope of the order but "did not quote or discuss the sentence in the ITC Report immediately preceding the one on which it relied," suggesting that the product is outside the scope of the order.  *Id.*

Here, Commerce failed to consider that sodium glycinate, similar to glycine slurry, was considered to be a precursor of dried crystalline glycine in the USITC report.  Commerce also failed to recognize that the production process used to convert sodium glycinate to dried crystalline glycine is identical to the one used for calcium glycinate.

Commerce's finding that calcium glycinate is a non-scope glycine input because it "has to be processed into glycine slurry first through multiple production steps and chemical processes" is thus not supported by substantial record evidence.  Similar to calcium glycinate, sodium glycinate also must be processed into glycine slurry first through multiple production steps and chemical processes.  Yet, the USITC clearly viewed sodium glycinate as a precursor of dried crystalline glycine in its report.  In its scope ruling, Commerce should have addressed why it treated calcium glycinate differently than sodium glycinate.  This significant deficiency in

Commerce's analysis in the Scope Ruling fails to meet the Court's substantial evidence standard and should be remanded as a result.

### B. COMMERCE'S SCOPE RULING UNLAWFULLY CHANGES THE SCOPE OF THE ORDERS

Commerce's Scope Ruling unlawfully changes the scope of the Orders because it limits the term "precursor of dried crystalline glycine" to a single product — glycine slurry.

Glycine is primarily produced using two separate methods: the hydrogen cyanide ("HCN") method and the monochloroacetic acid ("MCAA") method. *See* USITC Pub. No. 4900 at I-16. During the HCN production process, sodium glycinate is created through a series of chemical reactions. Sodium glycinate is then reacted with sulfuric acid to obtain a "glycine solution," which "then goes through one or more crystallization and filtration steps to produce a pure white glycine powder." *Id*. In the MCAA production process, MCAA and ammonia are mixed together in the presence of a catalyst to produce glycine. *Id*. In both processes, however, "glycine slurry, the undried form of glycine, is the prior production step of dried, crystalline glycine." *See Glycine From India, Japan, and Korea*, Investigation Nos. 731-TA-1111–1113 (Preliminary), Publication 3921 (May 2007), at 5.

In its Scope Ruling analysis, Commerce found that "calcium glycinate is a non-scope input used in the production of glycine slurry and glycine slurry is a precursor of dried crystalline glycine." *See* P.R. 9. Commerce reasoned that "because calcium glycinate has to be processed into glycine slurry first through multiple production steps and chemical processes, before glycine slurry is turned into dried crystalline glycine, we find that calcium glycinate is not a precursor of dried crystalline glycine." *Id*.

Commerce's reasoning suffers from significant flaws and unreasonably limits the term "precursors of dried crystalline glycine" to only glycine slurry. As noted, the USITC recognized

in the original investigation resulting in the Orders that other products, such as sodium glycinate and non-reacted ammonia-monochloroacetic or chloroacetic acid mix, are also precursors of dried crystalline glycine, as described in the scope of the Orders. *See* USITC Pub. No. 4900 at IV-1, n. 4. Because glycine slurry is the prior production step of dried crystalline glycine in both the HCN and MCAA production processes, it follows that, under Commerce's interpretation of the scope language, sodium glycinate or other identified precursors also cannot be characterized as "precursors of dried crystalline glycine." Thus, in its Scope Ruling analysis, Commerce impermissibly changed the scope of the Orders by limiting the term "precursor" to glycine slurry only. No other product arising from the known glycine production methods can satisfy Commerce's erroneous interpretation of the term "precursor."

The scope of the Orders was never intended to limit the term "dried crystalline glycine" to glycine slurry only. This is evident from the USITC's final report, which explains that all precursors of dried crystalline, "including but not limited to, glycine slurry (*i.e*., glycine in a non-crystallized form), sodium glycinate and a non-reacted ammonia-monochloroacetic or chloroacetic acid mix" are covered by the scope of the Orders. Because Commerce's interpretation of this language impermissibly changes the scope of the Orders, its decision should be remanded.

### C. COMMERCE FAILED TO COMPLY WITH ITS OWN REGULATIONS BY FAILING TO CONSIDER OTHER PRIMARY INTERPRETIVE SOURCES

Commerce's own regulation states that, in "determining whether a product is covered by the scope of the order at issue, {Commerce} will consider the language of the scope and may make its determination on this basis alone if the language of the scope, including the descriptions of merchandise expressly excluded from the scope, is dispositive." 19 C.F.R. § 351.225(k).

In making this determination, Commerce may take into account "{t}he following primary interpretive sources …:

> (A) The descriptions of the merchandise contained in the petition pertaining to the order at issue;
>
> (B) The descriptions of the merchandise contained in the initial investigation pertaining to the order at issue;
>
> (C) Previous or concurrent determinations of the Secretary, including prior scope rulings, memoranda, or clarifications pertaining to both the order at issue, as well as other orders with same or similar language as that of the order at issue; and
>
> (D) Determinations of the Commission pertaining to the order at issue, including reports issued pursuant to the Commission's initial investigation."

19 C.F.R. § 351.225(k)(1)(i).

The language of the scope is not dispositive as to the issue of whether calcium glycinate is a precursor of dried crystalline glycine because the term "precursor" is not defined by the scope.  To fill this gap, Commerce solely relied on the USITC's final report during the original investigation to find that glycine slurry is a precursor of dried crystalline glycine. As noted, while relying on the USITC report for one purpose, Commerce failed to address other statements of the USITC in the same final report indicating that sodium glycinate, which is substantially similar to calcium glycinate in terms of chemistry and production method, was also considered as a precursor of dried crystalline glycine.

Equally important, however, Commerce also failed to consider other primary interpretive sources that would have informed its analysis as to whether calcium glycinate is a precursor of dried crystalline glycine.  In promulgating the current regulations, Commerce stated that, "in most scope inquiries the language of the scope is written in more general or broad terms, and, therefore, in the majority of scope inquiries, it is likely that the current (k)(1) sources would be considered by Commerce in determining if a product is covered by the scope of an order in

a scope ruling." *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300, 52323 (Dep't of Commerce Sept. 20, 2021). These primary interpretive sources, Commerce explained, "were always intended to be interpretive tools to understand the plain meaning of the scope, recognizing that terms that may have been plain at the time they were drafted and adopted upon the issuance of the order could be interpreted differently at some later point." *Id*. Thus, "the intentions and interpretations of Commerce, the ITC, and the injured domestic parties themselves at the time of the underlying investigation should be given primary consideration in defining and interpreting the scope of the order." *Id*. In *Star Pipe Prods*., the Court found that Commerce failed to comply with 19 C.F.R. § 351.225(k)(1) when it failed "to consider the merchandise descriptions in the petition" in determining whether Star Pipe's flanges were within the scope of the antidumping duty order on *Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*. *Star Pipe Prods. v. United States*, 365 F. Supp. 3d 1277, 1282–83 (Ct. of Int'l Trade 2019).

In its Scope Ruling, Commerce acknowledged that the language of the scope is not dispositive as to whether calcium glycinate is within the scope of the Orders, relying instead on a portion of the USITC report to determine that glycine slurry is a precursor of dried crystalline glycine and finding that calcium glycinate is a non-scope precursor of glycine slurry, which is an in-scope precursor of dried crystalline glycine. *See* P.R. 9. This interpretation is incomplete absent the consideration of other primary interpretive sources that Commerce is required to consider when the language of the scope is not dispositive on the issue.

For example, concerning the antidumping duty order on *Glycine from the People's Republic of China*, Commerce determined in 2012 that the "processing of Chinese-origin

technical grade or crude glycine, including but not limited to AAA-97TE, ACAA-97TE,

sodium glycinate and glycine slurry, is not substantially transformed into glycine of Indian origin

and therefore such glycine remains within the scope of the Order." *See Glycine From*

*the People's Republic of China: Final Partial Affirmative Determination of Circumvention of*

*the Antidumping Duty Order*, 77 Fed. Reg. 73426 (Dep't of Commerce Dec. 10, 2012).  There,

with a similar scope under consideration, Commerce clearly recognized that sodium glycinate —

which can readily be turned into dried crystalline glycine applying a process identical to that

used to convert calcium glycinate into dried crystalline glycine — is a crude glycine that can be

used as a glycine precursor.

　　　If Commerce had reviewed and considered the descriptions of the merchandise at issue in

the petition, it would have recognized that the petitioners were concerned about circumvention of

the Orders because "glycine is produced in discrete steps" and "it is possible to stop the

production process before the production of crystalline glycine has been completed."  *See*

Antidumping and Countervailing Duty Petitions on Glycine from the People's Republic of

China, India, Japan, and Thailand (March 27, 2018) at 20–22.  Glycine slurry, for example, can

"readily be turned into crystalline glycine with only minimal processing" and is thus a precursor

of dried crystalline glycine.  *Id*.  The petitioners also explained, however, it "is also possible to

stop the production one step before the creation of the crude glycine slurry, when the product is

still in the form of a glycine intermediate."  *Id*.  For example, sodium glycinate and non-reacted

ammonia-monochloroacetic acid mix are among these intermediary products that can readily be

turned into dried crystalline glycine.  *Id*.  As such, the petitioners proposed that the investigation

cover "precursors of dried crystalline glycine, including, but not limited to, glycine slurry (*i.e.*,

glycine in a non-crystallized form), sodium glycinate, and a non-reacted ammonia-

monochloroacetic or chloroacetic acid mix." *Id*. at 22.  Including sodium glycinate and a non-reacted ammonia-monochloroacetic or chloroacetic acid mix as precursors of dried crystalline glycine, the petitioners explained, would "avoid the possibility of circumvention." *Id*. at 20–21.

Subsequently, Commerce issued a supplemental questionnaire asking the petitioners whether they intend to cover crude glycine and "precursors of dried crystalline glycine that are processed in a third country" by the scope of the investigations.  *See* Letter from the Department of Commerce to David M. Schwartz, "Petitions for the Imposition of Antidumping Duties on Imports of Glycine from India, Japan, and Thailand, and Countervailing Duties on Imports from the People's Republic of China, India, and Thailand: Supplemental Questions" (April 2, 2018), at 4.  The petitioners heeded Commerce's advice and revised the scope of the investigations to cover crude glycine, including sodium glycinate, and other precursors of dried crystalline glycine that are processed in a third country.  Petitioners' Responses to Supplemental Questions (April 4, 2018) at 4–5.

In short, the history of the Orders at issue clearly show that the petitioners have always intended to cover all precursors of dried crystalline glycine, including sodium glycinate, within the scope of the Orders to prevent the circumvention of the Orders with intermediate products that can readily be turned into dried crystalline glycine.  These include both sodium glycinate and calcium glycinate, which can easily be converted to dried crystalline glycine using sulfuric acid and additional minimal processing.  *See* P.R. 1 at Exhibit 6.

Commerce's failure to consider other interpretive sources, including the petition and its 2012 determination, in determining the meaning of "precursor" as used in the scope language fails to comply with 19 C.F.R. § 351.225(k).  Once Commerce determined that the language of

the scope is not dispositive as to the question of whether calcium glycinate is covered by the scope of the Orders, Commerce should have consulted all relevant primary interpretive sources to discern the intent and meaning of the parties during the original investigation.  The history of these proceedings clearly show that the petitioners have always intended to cover all precursors of dried crystalline glycine, including sodium glycinate, within the scope of the Orders to prevent the circumvention of the Orders with intermediate products that can readily be turned into dried crystalline glycine.  Contrary to Commerce's findings in the Scope Ruling, precursors of dried crystalline glycine are not limited to glycine slurry but also cover all intermediate products that can be processed into glycine slurry and then into dried crystalline glycine, with minimal processing.  By not considering these primary interpretive sources, Commerce failed to comply with 19 C.F.R. § 351.225(k) and the Court should remand Commerce's Scope Ruling and order Commerce to supplement the record with all primary interpretive sources that are relevant to the determination as to whether calcium glycinate is within the scope of the Orders.

**VII.**    **CONCLUSION AND PRAYER FOR RELIEF**

For these reasons, the Plaintiff respectfully requests that the Court:

1)    Enter judgment in favor of the Plaintiff;

2)    Hold and declare that Commerce's Scope Ruling is unsupported by substantial evidence;

3)    Hold and declare that Commerce's Scope Ruling unlawfully changes the scope of the Orders;

4)    Hold and declare that Commerce's Scope Ruling is inconsistent with 19 C.F.R. § 351.225(k) and therefore fails to follow Commerce's regulations;

5)     Remand Commerce's Scope Ruling with instructions to supplement the record
with all relevant primary interpretive sources, including the petition and its 2012 scope ruling
pertaining to the antidumping order on *Glycine from the People's Republic of China*.

6)     Grant the Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ David M. Schwartz
David M. Schwartz
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:  (202) 263-4170
Telefax:       (202) 331-8330
Email:         David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

DEER PARK GLYCINE, LLC,

PLAINTIFF,

v.

UNITED STATES,

DEFENDANT.

COURT NO. 23-00238

### PROPOSED JUDGMENT

Upon consideration of the Plaintiff's Motion for Judgment on the Agency Record, the Defendant United States' response thereto, and all other papers and proceedings had herein, it is hereby

ORDERED that the Motion for Judgment on the Agency Record filed by the Plaintiff is granted; and it is further

ORDERED that this matter is remanded to the United States Department of Commerce for disposition consistent with the Court's final opinion.

SO ORDERED.

_____
Joseph A. Laroski, Jr., Judge

Dated: _____
New York, New York

<u>**CERTIFICATE OF COMPLIANCE**</u>

I hereby certify that this brief complies with the word limitation of Court of International

Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 5,124 words,

excluding the parts of the brief exempted from the word limitation.  In preparing this certificate

of compliance, I have relied upon the word count function of the word processing system used to

prepare the brief.

/s/ David M. Schwartz
David M. Schwartz

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:   (202) 263-4170
Telefax:        (202) 331-8330
Email:          David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

June 6, 2024