PUBLIC DOCUMENT

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEER PARK GLYCINE, LLC,<br><br>                PLAINTIFF,<br><br>   v.<br><br>UNITED STATES,<br><br>                DEFENDANT. | COURT NO. 23-00238<br><br>PUBLIC DOCUMENT |

REPLY BRIEF OF THE PLAINTIFF IN OPPOSITION
TO U.S. DEPARTMENT OF COMMERCE SCOPE RULING

David M. Schwartz
Kerem Bilge

THOMPSON HINE LLP

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:  (202) 263-4170
Telefax:      (202) 331-8330
Email:        David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

Dated:  September 3, 2024

P<small>UBLIC</small> D<small>OCUMENT</small>

T<small>ABLE OF</small> C<small>ONTENTS</small>

**Page**

I.    T<small>HE</small> D<small>EFENDANT'S</small> P<small>ROCEDURAL</small> A<small>RGUMENTS</small> S<small>HOULD</small> B<small>E</small> R<small>EJECTED</small>..............................1

II.   C<small>OMMERCE'S</small> S<small>COPE</small> R<small>ULING</small> I<small>S</small> N<small>OT</small> S<small>UPPORTED BY</small> S<small>UBSTANTIAL</small> E<small>VIDENCE</small> ................7

III.  T<small>HE</small> D<small>EFENDANT</small> F<small>AILS TO</small> R<small>ECOGNIZE THE</small> U<small>NLAWFUL</small> C<small>HANGES</small> M<small>ADE</small>
      <small>BY</small> C<small>OMMERCE TO THE</small> S<small>COPE OF THE</small> O<small>RDERS</small>...................................................9

IV.   C<small>OMMERCE'S</small> I<small>NTERPRETATION OF THE</small> S<small>COPE</small> L<small>ANGUAGE</small> W<small>ITHOUT</small> C<small>ONSIDERING</small>
      R<small>ELEVANT</small> P<small>RIMARY</small> I<small>NTERPRETATIVE</small> S<small>OURCES</small> I<small>S</small> I<small>NCOMPLETE</small> ...................................12

V.    C<small>ONCLUSION AND</small> P<small>RAYER FOR</small> R<small>ELIEF</small> ...........................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*CS Wind Vietnam Co. v. United States,*
    832 F.3d 1367 (Fed. Cir. 2016)................................................................................9

*Eckstrom Indus., Inc. v. United States,*
    254 F.3d 1068 (Fed. Cir. 2001)..............................................................................12

*Gerald Metals, Inc. v. United States,*
    132 F.3d 716 (Fed. Cir. 1997)..................................................................................9

*Intrepid v. International Trade Admin.,*
    16 C.I.T. 204 (1992) ................................................................................................7

*Itochu Bldg. Prods. v. United States,*
    733 F.3d 1140 (Fed. Cir. 2013)................................................................................2

*NEC Corp. v. Dep't of Commerce,*
    74 F. Supp. 2d 1302 (Ct. Int'l Trade 1999) .............................................................6

*OMG, Inc. v. United States,*
    972 F.3d 1358 (Fed. Cir. 2020)................................................................................6

*Qingdao Taifa Group Co. v. United States,*
    637 F. Supp. 2d 1231 (Ct. of Int'l Trade 2009).......................................................5

*Saha Thai Steel Pipe Pub. Co., Ltd. v. United States,*
    605 F. Supp. 3d 1348 (Ct. of Int'l Trade 2022).......................................................5

*Saha Thai Steel Pipe Pub. Co. v. United States,*
    101 F.4th 1310 (Fed. Cir. 2024) .........................................................................5, 13

*Sandvik Steel Co. v. United States,*
    164 F.3d 596 (Fed. Cir. 1998)..................................................................................2

*Yangzhou Bestpak Gifts & Crafts Co. v. United States,*
    716 F.3d 1370 (Fed. Cir. 2013)................................................................................2

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(ii) ........................................................................................7

19 U.S.C. § 1516a(b)(2)(A) .............................................................................................7

Chemical Weapons Convention Implementation Act of 1998 ........................................................6

**Regulations**

19 C.F.R. § 351.225(k)(1)(i) ................................................................................................12

*Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300 (Dep't of Commerce Sept. 20, 2021) ...........................................................................................................................13

**Administrative Agency Decisions**

*Glycine from China, India, and Japan*, Investigation Nos. 701-TA-603-604 and 731-TA-1413-1414 (Final), USITC Pub. 4900 (June 2019) ........................................................................... *passim*

*Glycine From India, Japan, and Korea, Investigation Nos*. 731-TA-1111-1113 (Preliminary), USITC Pub. 3921 (May 2007) ...........................................................11

*Glycine From the People's Republic of China: Final Partial Affirmative Determination of Circumvention of the Antidumping Duty Order*, 77 Fed. Reg. 73426 (Dep't of Commerce Dec. 10, 2012) ...................................................................13, 14

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEER PARK GLYCINE, LLC,<br><br>                    PLAINTIFF,<br><br>      V.<br><br>UNITED STATES,<br><br>                    DEFENDANT. | COURT NO. 23-00238<br><br>PUBLIC DOCUMENT |

REPLY BRIEF OF THE PLAINTIFF IN OPPOSITION
TO U.S. DEPARTMENT OF COMMERCE SCOPE RULING

I.    THE DEFENDANT'S PROCEDURAL ARGUMENTS SHOULD BE REJECTED

In its response, the Defendant argues that the Court should not consider certain arguments made by the Plaintiff in its opening brief because they were not raised before Commerce at the administrative level. *See* ECF No. 25 ("Defendant's Response Brief") at 10–15. The Defendant specifically seeks to exclude the Plaintiff's arguments in opposition to Commerce's scope ruling concerning: (1) Commerce's unreasonably restrictive interpretation of the term "precursor" used in the scope language; and (2) Commerce's failure to recognize in its scope ruling that sodium glycinate, which goes through an identical production process as calcium glycinate to obtain dried crystalline glycine, was also viewed as a precursor of dried crystalline glycine by the U.S. International Trade Commission ("USITC"). *Id*. However, the Defendant's exhaustion arguments do not apply here because the Plaintiff never had an opportunity to comment on or submit a rebuttal to Commerce's scope ruling. Finding

otherwise would effectively preclude the Plaintiff from seeking a judicial remedy to an administrative agency decision that it did not have a full and fair opportunity to oppose at the administrative agency level.

The doctrine of exhaustion provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Yangzhou Bestpak Gifts & Crafts Co. v. United States,* 716 F.3d 1370, 1381 (Fed. Cir. 2013) (citing *Sandvik Steel Co. v. United States*, 164 F.3d 596, 599 (Fed. Cir. 1998)).  The exhaustion doctrine does not apply, however, where "exhaustion would be a useless formality, or where the party had no opportunity to raise the issue before the agency."  *Yangzhou Bestpak* at 1381 (internal quotation marks omitted).  "Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness."  *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013).

In its scope ruling application, the Plaintiff explained that calcium glycinate can be used as a precursor of glycine when it is deconstructed using sulfuric acid.  P.R. 1 ("Scope Ruling Application") at Exhibit 6.  When used in glycine production, the Plaintiff further explained, calcium glycinate is a precursor of dried crystalline glycine and thus should be found within the scope of the Orders.  *Id*.  The Plaintiff stated that the "manufacturing equipment necessary to produce glycine from MCAA and sodium glycinate, *i.e.*, reactor, crystallizer, filters and dryer, are the same manufacturing equipment needed to manufacture glycine from calcium glycinate." *Id*.

In its scope ruling, Commerce found that "{c}alcium glycinate is a precursor of glycine slurry, which is an in-scope glycine product, and glycine slurry is a precursor of dried crystalline glycine." P.R. 9 ("Scope Ruling").  In making the finding that glycine slurry is a precursor of

dried crystalline glycine, Commerce relied on a footnote in the USITC's final report during the original investigation, which states:

> The scope of this proceeding also covers precursors of dried crystalline glycine, including, but not limited to, glycine slurry (*i.e.*, glycine in a non-crystallized form), sodium glycinate and a non-reacted ammonia-monochloroacetic or chloroacetic acid mix.

*See Glycine from China, India, and Japan*, Investigation Nos. 701-TA-603–604 and 731-TA-1413–1414 (Final), USITC Pub. 4900 (June 2019) ("USITC Pub. 4900"), at IV-1, n. 4.

The Plaintiff appealed Commerce's scope ruling because, *inter alia*, Commerce's interpretation of the term "precursor" unreasonably limits the pertinent language in the scope to glycine slurry, since glycine slurry is the only product that immediately precedes dried crystalline glycine in all known glycine production methods.

After Commerce released its scope ruling that raised these issues for the first time in the underlying administrative agency proceeding, the Plaintiff did not have any opportunity to challenge Commerce on these issues at the administrative agency level. Unlike an antidumping or countervailing duty proceeding, Commerce neither released a preliminary ruling nor provided the parties an opportunity to comment on Commerce's findings concerning the scope ruling application at issue in the underlying scope proceeding. Instead, after receiving the Plaintiff's scope ruling application, Commerce initiated the scope inquiry proceeding on August 30, 2023, and issued its negative scope ruling on October 11, 2023. Because the Plaintiff never had an opportunity to comment on the flaws and discrepancies in Commerce's October 2023 scope ruling, judicial review serves as the Plaintiff's only avenue available to reverse Commerce's unreasonable determination. The Defendant's argument that the Plaintiff failed to exhaust its remedies at the administrative agency level should be rejected because the Plaintiff did not have any available remedies at that level.

The Defendant claims that the Plaintiff should have proposed a definition for the term "precursor" and identified the similarities between calcium glycinate and sodium glycinate in its scope ruling application.  In this appeal, however, the Defendant conveniently ignores that the Plaintiff is challenging Commerce's erroneous interpretation of the term "precursor" in the underlying scope proceeding.  At the time it submitted its scope ruling application, the Plaintiff reasonably presumed that Commerce, as the agency charged with administering the scope of the Orders, would interpret the scope language consistent with the understanding of the parties during the original investigation.  The Plaintiff provided all the technical information needed for Commerce to make its interpretation, including: (1) a detailed description of the manufacturing process, (2) previous CBP classifications of calcium glycinate and sodium glycinate, and (3) Commerce's scope decision memorandum in the original investigation establishing the scope of the Orders.  *See* Scope Ruling Application.  The Plaintiff was not required to predict that Commerce would make an interpretation in its scope ruling that would be plainly erroneous and contradictory with the language of the scope as understood by the parties during the original investigation.

As part of its scope ruling application, the Plaintiff detailed the glycine production process using calcium glycinate and explained that the manufacturing equipment used in glycine production with calcium glycinate as a precursor is identical to the manufacturing equipment used in glycine production with sodium glycinate as a precursor.  The information in the application should have been sufficient to inform Commerce that the glycine production process involving calcium glycinate and the glycine production process involving sodium glycinate are identical and that calcium glycinate, like sodium glycinate, is a precursor of dried crystalline glycine.

This Court has previously rejected exhaustion arguments under similar circumstances and should do so here.  In *Saha Thai Steel Pipe*, this Court addressed whether a respondent failed to exhaust its administrative remedies when the respondent challenged Commerce's adverse facts available finding in the final results of an antidumping duty administrative review after Commerce did not apply adverse facts available to that respondent in the preliminary results of the same proceeding.  *Saha Thai Steel Pipe Pub. Co., Ltd. v. United States*, 605 F. Supp. 3d 1348, 1364 (Ct. of Int'l Trade 2022).  While the Defendant claimed, like here, that "Saha Thai failed to exhaust its administrative remedies because it did not raise the issue of notice in its administrative briefings," the Court found that "Saha Thai had no opportunity to object to Commerce's failure to provide notice at the administrative level" and that a "party may seek judicial review of an issue that it did not raise in a case brief if Commerce did not address the issue until its final decision, because in such a circumstance the party would not have had a full and fair opportunity to raise the issue at the administrative level." *Id*. (internal quotation marks omitted).   In *Qingdao Taifa Group*, this Court similarly determined that a respondent's failure to raise an objection to an adverse inference finding in the final results did not preclude it from seeking judicial review of the issue before this Court because the respondent did not have an opportunity to raise these issues at the administrative agency level in the first instance. *Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231, 1092 (Ct. of Int'l Trade 2009).

The facts here are analogous to both *Saha Thai Steel Pipe* and *Qingdao Taifa Group.* The Plaintiff sought a scope ruling from Commerce on whether calcium glycinate is covered by the scope of the Orders.  In its scope ruling, Commerce found that calcium glycinate is outside the scope of the Orders, but Commerce's analysis contained significant gaps and discrepancies that the Plaintiff could not have possibly foreseen at the time it submitted its scope ruling

application.  After Commerce released its final scope ruling, the Plaintiff's only available

remedy to oppose Commerce's unreasonable scope ruling was to seek judicial review.  In short,

the Plaintiff did not have "a full and fair opportunity to raise the issue at the administrative level"

before Commerce because it could not have predicted in advance that Commerce's interpretation

in its final scope ruling would contradict the plain meaning of the language used in the scope of

the Orders, effectively restricting the scope of the Orders.  The Plaintiff should not be precluded

from seeking judicial review of a scope ruling to which it did not have any opportunity to object

at the administrative agency level.

Moreover, the Defendant's objections to the introduction of dictionary definitions for

the term "precursor," which is critical in Commerce's analysis in the underlying scope

proceeding, are confusing at best.  The U.S. Court of Appeals for the Federal Circuit regularly

consults "dictionary definitions to assist in determining the plain meaning of a term in

an antidumping or countervailing duty order." *OMG, Inc. v. United States*, 972 F.3d 1358, 1365

(Fed. Cir. 2020); *see also NEC Corp. v. Dep't of Commerce*, 74 F. Supp. 2d 1302, 1307 (Ct. Int'l

Trade 1999) ("In determining the common meaning of a term, courts may and do consult

dictionaries, scientific authorities, and other reliable sources of information including testimony

of record." (internal quotation marks omitted)).  Because the plain meaning of the term

"precursor" is central to Commerce's analysis in the underlying scope proceeding, the Plaintiff

offered three alternative definitions for this term, from two dictionaries and the Chemical

Weapons Convention Implementation Act of 1998.  *See* ECF No. 24.  These definitions were not

provided to Commerce in the scope ruling application because the Plaintiff had no reason to

predict at the time it submitted its scope ruling application that Commerce would interpret

- 6 -

the term "precursor" in such a restrictive manner that any product, other than glycine slurry, would be effectively precluded as a "precursor of dried crystalline glycine."

The Defendant's exhaustion theory does not apply to the facts here. The Court should reject the Defendant's request and consider these definitions in determining whether Commerce's interpretation of the scope language is reasonable and consistent with how the parties understood the scope at the time of the original investigation.

## II.   COMMERCE'S SCOPE RULING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

The Defendant claimed in its brief that Commerce's scope ruling "did not ignore record evidence that undermined its conclusion" and that Commerce was not "required to scrutinize the entirety of the report" in making its analysis as to whether calcium glycinate is covered by the scope of the Orders. Defendant's Response Brief at 15. Contrary to the Defendant's claims, the USITC report is part of the underlying administrative record and Commerce should not be allowed to cherry-pick from a record document certain sentences that support its intended conclusion and ignore others in the same document that directly contradict its findings.

19 U.S.C. § 1516a(b)(1)(B)(ii) states that the Court should review Commerce's scope rulings based on the substantial evidence standard. 19 U.S.C. § 1516a(b)(2)(A) defines the "record" as "a copy of all information presented or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding." The administrative record contains documents submitted to Commerce as well as "any other documents intertwined with the particular inquiry and considered by ITA in making its determination." *Intrepid v. International Trade Admin*., 16 C.I.T. 204, 205 (1992).

Commerce relied on a portion of a sentence in the USITC report to determine that glycine slurry is a precursor of dried crystalline glycine in the underlying scope proceeding.

It ignored, however, the rest of the sentence stating that sodium glycinate is also a precursor of dried crystalline glycine.  USITC Pub. No. 4900 at, IV-1, n. 4.  As described by the USITC in the same report, when sodium glycinate is obtained during the hydrogen cyanide ("HCN") production process, it is mixed with an acid, such as sulfuric acid, to obtain a glycine solution, which "then goes through one or more crystallization and filtration steps to produce a pure white glycine powder."  *Id*. at I-16.

If Commerce properly considered the record evidence, it would have reasonably concluded that calcium glycinate, like sodium glycinate, goes through a few minor processes to first obtain glycine slurry, which is then crystallized and filtered to obtain dried crystalline glycine.  Commerce, however, chose to ignore the USITC's statements in the same sentence and the "Manufacturing Processes" section of the report that directly contradict its findings in the scope ruling.  Commerce's failure to consider the USITC's statements in the same report that contradicted its findings led to its erroneous conclusion that calcium glycinate cannot be covered by the scope of the Orders because it "is a non-scope input used in the production of glycine slurry and glycine slurry is a precursor of dried crystalline glycine." *See* Scope Ruling at 4.

Commerce should not be allowed to freely ignore record evidence that detracts from its intended conclusion.  The USITC report provides evidence that Commerce's conclusion in the underlying scope proceeding is plainly wrong because the term "precursor" was never intended to encompass only the product that immediately precedes "dried crystalline glycine" in glycine manufacturing processes.  The term "precursor" includes other products that can readily be turned into dried crystalline glycine with a few minor processes, including sodium glycinate and non-reacted ammonia-monochloroacetic or chloroacetic acid mix. USITC Pub. No. 4900 at IV-1, n. 4.

The substantial evidence standard "requires more than a mere assertion of evidence which in and of itself justified {Commerce's determination} without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997); *see also CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Commerce's failure to adequately address record evidence adversely affecting its findings in the underlying scope proceeding warrants the Court's remand in this case.

## III.    THE DEFENDANT FAILS TO RECOGNIZE THE UNLAWFUL CHANGES MADE BY COMMERCE TO THE SCOPE OF THE ORDERS

The Defendant argues in its brief that Commerce did not unreasonably limit the term "precursor" to glycine slurry only and that Commerce's scope ruling "did not foreclose the possibility that a different precursor of glycine slurry, such as a chemical that is more readily converted into dried crystalline glycine, could be within the scope of the Orders."  Defendant's Response Brief at 16.  Further, the Defendant argues, without any support, that "there may be" glycine production methods, other than the HCN method and the monochloroacetic acid ("MCA") method, that would involve a material other than glycine slurry that could qualify as a "precursor of dried crystalline glycine" under Commerce's restrictive interpretation in the scope ruling.  *Id*. at 16–17.

The Defendant's comments are speculative at best and fail to recognize the significant changes made by Commerce to the scope of the Orders in its ruling.

First, under Commerce's restrictive interpretation of the term "precursor," sodium glycinate, a product the USITC explicitly acknowledged as a precursor of dried crystalline glycine, would not qualify as a "precursor."  In the original investigation,

sodium glycinate, along with glycine slurry and non-reacted ammonia-monochloroacetic or

chloroacetic acid mix, were viewed as "precursors of dried crystalline glycine."

USITC Pub. 4900 at IV-1, n. 4.  The same final report described the HCN production process,

which involves sodium glycinate, as follows:

> The HCN process uses hydrogen cyanide and formaldehyde ($CH_2O$) as
> the primary starting materials. These chemicals are mixed with aqueous
> ammonia ($NH_4OH$) in the first reaction step of the process. The reaction
> product from this first step is then reacted with caustic soda ($NaOH$) to
> produce sodium glycinate. Glycine is produced when an acid, such as
> sulfuric acid, is mixed with sodium glycinate. The glycine solution then
> goes through one or more crystallization and filtration steps to produce
> a pure white glycine powder.

*Id.* at I-16.

In other words, in the HCN production process, sodium glycinate is mixed with

sulfuric acid to obtain a glycine solution, which goes through multiple crystallization and

filtration steps to obtain dried crystalline glycine.  As the Plaintiff explained in its August 2023

Scope Ruling Application, the production of glycine from calcium glycinate involves

the following steps:

> Producing glycine from calcium glycinate requires that the calcium
> glycinate first be dissolved in water. The resulting solution is then treated
> with sulfuric acid to form glycine, which remains in solution, and
> the precipitate calcium sulfate. The calcium sulfate is filtered from
> the solution. The remaining filtrate is then crystallized to recover
> the glycine as wet cake and dried. Manufacturing equipment necessary to
> produce glycine from {monochloroacetic acid} and sodium glycinate,
> i.e., reactor, crystallizer, filters and dryer, are the same manufacturing
> equipment needed to manufacture glycine from calcium glycinate.

*See* Scope Ruling Application at Exhibit 6.

In its scope ruling, Commerce found that calcium glycinate is outside the scope of

the Orders because it goes through "multiple production processes in which it is treated with

a chemical, resulting in a solution of glycine and another chemical, and then separated from

this other chemical to become glycine slurry." Scope Ruling at 5. However, the production processes needed to obtain dried crystalline glycine from calcium glycinate are identical to the ones required for sodium glycinate. Both are treated with sulfuric acid to obtain glycine slurry. Then, the wet glycine is filtered and dried to obtain dried crystalline glycine.

Thus, under Commerce's reasoning, sodium glycinate, like calcium glycinate, would not be viewed as a precursor of dried crystalline glycine. This finding, however, would effectively change the scope of the Orders since sodium glycinate was included in the scope because, *inter alia*, it is a precursor of dried crystalline glycine.

Second, with its scope ruling, Commerce effectively foreclosed the possibility that any product, other than glycine slurry, can qualify for Commerce's limiting interpretation of the term "precursor" used in the scope language because there simply is no other product that immediately precedes dried crystalline glycine in the two known glycine production processes identified by the USITC in its final report during the original investigation. *See* USITC Pub. No. 4900 at I-16 ("There are two known processes for the commercial production of glycine: the hydrogen cyanide ("HCN") process and the monochloroacetic acid ("MCA") process."). The Defendant is unable to point to any other glycine production method or any other single product that would qualify as a "precursor" under Commerce's restrictive interpretation in the underlying scope proceeding. The Defendant speculates that there "may" be other products that would potentially qualify for Commerce's definition of "precursor," but the record evidence shows that under both the HCN and MCA glycine production methods, the "two known processes for the commercial production of glycine," glycine slurry is the product that immediately precedes dried crystalline glycine. USITC Pub. No. 4900 at I-16; *Glycine From India, Japan, and Korea, Investigation Nos*. 731-TA-1111–1113 (Preliminary),

USITC Pub. 3921 (May 2007), at 5. If Commerce's interpretation of the scope is adopted, then it is simply impossible for any product, other than glycine slurry, to qualify as a precursor under the two available glycine production processes.

"Commerce cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *See Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). Commerce's scope ruling has effectively changed the scope of the Orders and should be remanded.

## IV. COMMERCE'S INTERPRETATION OF THE SCOPE LANGUAGE WITHOUT CONSIDERING RELEVANT PRIMARY INTERPRETATIVE SOURCES IS INCOMPLETE

In its reply brief, the Defendant argues that Commerce has discretion under the current version of its regulations to decide if certain primary interpretative sources should be applied in its determination of whether a product is covered by the scope of the Orders. Defendant's Response Brief at 17–20. In support, the Defendant points to language in the applicable regulations stating that the "primary interpretive sources may be taken into account under paragraph (k)(1) introductory text of this section, at the discretion of the Secretary." *See* 19 C.F.R. § 351.225(k)(1)(i).

The Defendant's position on this matter negates the importance of the primary interpretative sources that Commerce regularly uses in determining whether a product is covered by the scope of an order. In its scope ruling, Commerce relied on a portion of a single sentence in the USITC's final report from the original investigation and ignored the USITC's findings in the same report that directly contradicted Commerce's conclusion in the scope ruling. Commerce also failed to consult other primary interpretative sources that would have informed its analysis as to whether calcium glycinate is covered by the scope of the Orders.

- 12 -

Even after the 2021 amendments to its regulations, Commerce envisioned that these primary interpretative sources "should be given primary consideration in defining and interpreting the scope of the order." *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300, 52323 (Dep't of Commerce Sept. 20, 2021). These interpretative sources do not "control or alter the scope of the order" but "serve as interpretative aids that clarify or support Commerce's understanding of the scope language that Commerce may arrive at upon reviewing the scope language itself." *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310, 1325 (Fed. Cir. 2024). Commerce's arbitrary ignorance of these primary interpretative sources in the underlying scope proceeding where the plain language of the scope is not dispositive as to the issue of whether calcium glycinate is covered by the scope of the Orders is, at the very least, a blatant abuse of its discretion.

It is Commerce's failure to consult these interpretative sources that resulted in Commerce's egregiously erroneous determination in the underlying proceeding. These primary interpretative sources relating to the Orders clearly demonstrate the significant gaps in Commerce's interpretation of the term "precursor." These primary interpretative sources include: (1) the petition underlying the Orders, which clearly demonstrates that the Petitioners intended to cover all precursors that can readily be turned into dried crystalline glycine, even if the precursor needs to go through a few minor processes to first obtain glycine slurry before obtaining dried crystalline glycine (*Antidumping and Countervailing Duty Petitions on Glycine from the People's Republic of China, India, Japan, and Thailand* (March 27, 2018) at 20–22), (2) Commerce's affirmative circumvention determination (*see Glycine From the People's Republic of China: Final Partial Affirmative Determination of Circumvention of*

*the Antidumping Duty Order*, 77 Fed. Reg. 73426 (Dep't of Commerce Dec. 10, 2012)), and

(3) the scope ruling in the antidumping duty order on *Glycine from the People's Republic of*

*China*, which has similar scope language (*i.e.*, "This order covers glycine of all purity levels").

*Id.*

In its scope ruling, Commerce solely relied on the USITC's final report to determine

the meaning of "precursor" as used in the scope of the Orders. The USITC's report itself was

sufficient to alert Commerce that the term "precursor" as used in the scope language covers not

only glycine slurry but also other materials, such as sodium glycinate, that are obtained one step

before the creation of glycine slurry in the glycine production processes. If Commerce had

carefully reviewed the USITC report and other primary interpretive sources to discern

the meaning of the term "precursor" used in the scope of the Orders, it would have understood

that the term was not intended to be limited to glycine slurry. Commerce's failure to consult

these primary interpretive sources resulted in its erroneous interpretation of the scope language,

which found that calcium glycinate is outside the scope of the Orders. Commerce's failure to

consult these primary interpretive sources is, at the very least, an abuse of its discretion, resulting

in a deficient scope ruling analysis that should be remanded by this Court.

## V.    CONCLUSION AND PRAYER FOR RELIEF

For these reasons, the Plaintiff respectfully requests that the Court:

1)    Enter judgment in favor of the Plaintiff;

2)    Hold and declare that Commerce's Scope Ruling is unsupported by substantial

evidence;

3)    Hold and declare that Commerce's Scope Ruling unlawfully changes

the scope of the Orders;

4)      Hold and declare that Commerce's Scope Ruling is an abuse of its discretion and fails to follow its regulations;

5)      Remand Commerce's Scope Ruling with instructions to supplement the record with all relevant primary interpretive sources, including the petition and its 2012 scope ruling pertaining to the antidumping duty order on *Glycine from the People's Republic of China*; and

6)      Grant the Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ David M. Schwartz
David M. Schwartz
Kerem Bilge

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:  (202) 263-4170
Telefax:      (202) 331-8330
Email:        David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

September 3, 2024

- 15 -

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this brief complies with the word limitation of Court of International Trade Standard Chambers Procedures § 2(B)(1) and contains approximately 4,181 words, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ David M. Schwartz
David M. Schwartz

**THOMPSON HINE LLP**

1919 M Street, NW, Suite 700
Washington, DC  20036-3537
Telephone:  (202) 263-4170
Telefax:      (202) 331-8330
Email:       David.Schwartz@ThompsonHine.com

*Counsel to Deer Park Glycine, LLC*

September 3, 2024

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE JOSEPH A. LAROSKI, JR., JUDGE

| | |
|---|---|
| DEER PARK GLYCINE, LLC,<br><br>PLAINTIFF,<br><br>V.<br><br>UNITED STATES,<br><br>DEFENDANT. | COURT NO. 23-00238 |

## PROPOSED JUDGMENT

Upon consideration of the Plaintiff's Motion for Judgment on the Agency Record, the Defendant United States' response thereto, and all other papers and proceedings had herein, it is hereby

**ORDERED** that the Motion for Judgment on the Agency Record filed by the Plaintiff is granted; and it is further

**ORDERED** that this matter is remanded to the United States Department of Commerce for disposition consistent with the Court's final opinion.

**SO ORDERED.**

_____
Joseph A. Laroski, Jr., Judge

Dated: _____
        New York, New York