A-533-883, A-588-878, A-549-837<br>
C-533-884, C-570-081<br>
Remand<br>
Slip Op. 25-38<br>
**Public Document**<br>
E&C/OVI:  MR

***Deer Park Glycine, LLC v. United States***
**Court No. 23-00238, Slip Op. 25-38 (CIT April 10, 2025)**
**Glycine from India, Japan, Thailand, and the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

**I.      SUMMARY**

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the opinion and remand order of the U.S. Court of International Trade (CIT or the Court) in *Deer Park Glycine, LLC., v. United States*, Court No. 23-00238, Slip Op. 25-38 (CIT April 10, 2025) (*Remand Order*).  These final results pertain to Commerce's scope ruling on calcium glycinate concerning the antidumping duty orders on glycine from India, Japan, and Thailand, and the countervailing duty orders on glycine from India and the People's Republic of China (China).[1]  The Court remanded for Commerce "to correct two interpretive failures" – (1) failing to analyze whether calcium glycinate is a form of crude or technical glycine;[2] and (2) failing to consider information in the Scope Application[3] and U.S. International

---

[1] *See* Memorandum, "Glycine from India, Japan, Thailand, and the People's Republic of China:  Scope Ruling on Calcium Glycinate," dated October 11, 2023 (Scope Ruling); *see also Glycine from India and Japan:  Amended Final Affirmative Antidumping Duty Determination and Antidumping Duty Order*, 84 FR 29170 (June 21, 2019) (*Glycine AD Order*); *Glycine from Thailand:  Antidumping Duty Order*, 84 FR 55912 (October 18, 2019) (*Glycine from Thailand AD Order*); and *Glycine from India and the People's Republic of China:  Countervailing Duty Order*, 84 FR 29173 (June 1, 2019) (*Glycine CVD Order*) (collectively, the *Orders*).
[2] *See Remand Order* at 21-25.
[3] *See* Deer Park's Letter, "Scope Ruling Application," dated August 14, 2023 (Scope Application).

Trade Commission (ITC) Report[4] that undermines its conclusion.[5] As set forth in detail below, we continue to find that calcium glycinate is subject to the scope of the *Orders*, regardless of the producer, exporter, or importer.[6]

## II. SCOPE OF THE *ORDERS*[7]

The merchandise covered by these *Orders* is glycine at any purity level or grade. This includes glycine of all purity levels, which covers all forms of crude or technical glycine including, but not limited to, sodium glycinate, glycine slurry and any other forms of amino acetic acid or glycine. Subject merchandise also includes glycine and precursors of dried crystalline glycine that are processed in a third country, including, but not limited to, refining or any other processing that would not otherwise remove the merchandise from the scope of these orders if performed in the country of manufacture of the in-scope glycine or precursors of dried crystalline glycine. Glycine has the Chemical Abstracts Service (CAS) registry number of 56-40-6. Glycine and glycine slurry are classified under Harmonized Tariff Schedule of the United States (HTSUS) subheading 2922.49.43.00. Sodium glycinate is classified in the HTSUS under 2922.49.80.00. While the HTSUS subheadings and CAS registry number are provided for convenience and customs purposes, the written description of the scope of these *Orders* is dispositive.

## III. BACKGROUND

On August 14, 2023, Deer Park Glycine LLC (Deer Park), which at that time was doing business as GEO Specialty Chemicals, Inc., filed a scope ruling application which requested that

---

[4] *See Glycine from China, India, and Japan*, Investigation Nos. 701-TA-603-604 and 731-TA-1413-1414 (Final), USITC Pub. 4900 (June 2019) (*ITC Report*)).
[5] *See Remand Order* at 25-30.
[6] *See* 19 CFR 351.225(m)(1)(ii).
[7] *See Glycine AD Order*, 84 FR at 29172; *see also Glycine from Thailand AD Order*, 84 FR at 55913; and *Glycine CVD Order*, 84 FR at 29174.

Commerce conduct a scope inquiry to find calcium glycinate subject to the scope of the *Orders*.[8] According to Deer Park, calcium glycinate is used as a precursor product in the manufacture of glycine and is subject to the scope of the *Orders*.[9]

In its Scope Application, Deer Park argued that calcium glycinate is a precursor in the manufacture of glycine and therefore covered by the scope of the *Orders*:

> The merchandise covered by these investigations is glycine at any purity level or grade. This includes glycine of all purity levels, which covers all forms of crude or technical glycine including, but not limited to, sodium glycinate, glycine slurry and any other forms of amino acetic acid or glycine. Subject merchandise also includes glycine and precursors of dried crystalline glycine that are processed in a third country, including, but not limited to, refining or any other processing that would not otherwise remove the merchandise from the scope of these investigations if performed in the country of manufacture of the in-scope glycine or precursors of dried crystalline glycine.[10]

On October 11, 2023, Commerce issued the Scope Ruling that calcium glycinate is not subject to the scope of the *Orders*.[11] We found that calcium glycinate is not a precursor of dried crystalline glycine, but rather a precursor of glycine slurry, which is an in-scope glycine product and a precursor of dried crystalline glycine.[12] Because calcium glycinate must first be processed into glycine slurry, through multiple production steps and chemical processes, before glycine slurry can be processed into dried crystalline glycine, we found that calcium glycinate is not a precursor of dried crystalline glycine.[13] Based on our analysis, we found, in accordance with the plain language of the scope and 19 CFR 351.225(k)(1), that calcium glycinate was not subject to

---

[8] *See* Scope Application at 3; *see also Remand Order* at 3.
[9] *See* Scope Application at 3.
[10] *Id*. at 5-6.
[11] *See* Scope Ruling at 5.
[12] *Id*.
[13] *Id*.

the scope of the *Orders*. Commerce did not analyze whether calcium glycinate was subject to the scope of the *Orders* as a form of "crude or technical glycine."[14]

On December 7, 2023, Deer Park filed a complaint challenging the Scope Ruling before the Court.[15] On April 10, 2025, the Court remanded for Commerce "to correct two interpretive failures": (1) failing to analyze whether calcium glycinate is form of crude or technical glycine; and (2) failing to consider information in the Scope Application and *ITC Report* that undermine its conclusion.[16]

First, the Court held that, while "it was reasonable for Commerce to consider whether a precursor used in the manufacture of glycine is also a precursor of dried crystalline glycine," Commerce failed to analyze whether calcium glycinate is a "form of crude or technical glycine" and unreasonably "ignored these important parts of the {scope language}."[17] Thus, the Court remanded for Commerce to consider whether calcium glycinate is subject to the *Orders* under the following scope language: "{t}he merchandise covered by these *Orders* is glycine at any purity level or grade. This includes glycine of all purity levels, which covers all forms of crude or technical glycine including, but not limited to, sodium glycinate, glycine slurry and any other forms of amino acetic acid or glycine."[18]

Second, the Court held that Commerce's determination that calcium glycinate is not subject to the *Orders* as a precursor of glycine was unreasonable because Commerce failed to sufficiently analyze information in the Scope Application and in the *ITC Report* "that might undermine or complicate its analysis."[19] Specifically, the Court found Commerce failed to

---

[14] *See, generally,* Scope Ruling.
[15] *See* Complaint, *Deer Park Glycine, LLC., v. United States*, Court No. 23-00238 (ECF No. 8).
[16] *See, generally, Remand Order*.
[17] *Id*. at 21, 25.
[18] *Id*. at 25.
[19] *Id*. at 25-30 (citing *ITC Report*).

4

"explain the relationship between calcium glycinate, sodium glycinate, glycine slurry, and dried crystalline glycine" by analyzing relevant information contained in the Scope Application, such as the "Outlaw Declaration"[20] and descriptions of sodium glycinate, glycine slurry, and glycine in the *ITC Report*.[21]

On June 18, 2025, we released the Draft Results of Redetermination to all interested parties and invited parties to comment.[22] On June 25, 2025, Deer Park timely submitted comments on the Draft Results of Redetermination.[23]

IV.  **ANALYSIS**

Consistent with the *Remand Order*, we have: (1) analyzed whether calcium glycinate is a form of crude or technical glycine; and (2) considered information in the Scope Application and the *ITC Report*.

A.  **Legal Framework**

When a request for a scope ruling is filed, Commerce examines the scope language of the order(s) at issue and the description of the product contained in the scope ruling application.[24] Pursuant to Commerce's regulations, in determining whether a product is covered by the scope of an order, Commerce may make its determination on the basis of the scope language alone where such language is dispositive.[25]

Commerce may also take into account primary interpretive sources in making a scope ruling, including: (1) the descriptions of the merchandise contained in the petition and

---

[20] *Id.* at 6.
[21] *See ITC Report* at I-16.
[22] *See* Draft Results of Remand Redetermination, *Deer Park Glycine, LLC v. United States*, Court No.23-00238, Slip Op. 25-38 (CIT April 10, 2025), dated June 18, 2025 (Draft Results of Redetermination).
[23] *See* Deer Park's Letter, "Deer Park Glycine, LLC's Comments on Draft Results of Remand Redetermination," dated June 25, 2025 (Deer Park's Comments on Draft Results of Remand Redetermination).
[24] *See Walgreen Co. v. United States*, 620 F.3d 1350, 1357 (Fed. Cir. 2010).
[25] *See* 19 CFR 351.225(k)(1).

5

investigation; (2) previous or concurrent determinations by Commerce, including prior scope rulings, memoranda, or clarifications pertaining to the order at issue or other orders with same or similar language; and (3) determinations of the ITC pertaining to the order at issue.[26]

Additionally, Commerce may consider secondary interpretive sources, such as any other determinations of Commerce or the ITC, U.S. Customs and Border Protection (CBP) rulings or determinations, industry usage, dictionaries, and any other relevant record evidence, in determining a scope ruling. However, to the extent that these secondary interpretive sources conflict with primary interpretive sources under 19 CFR 351.225(k)(1)(i), the primary interpretive sources will normally control.[27] If Commerce determines that these sources are determinative, it will issue a final scope ruling as to whether the merchandise is subject to the scope of the order(s) at issue.[28]

Where Commerce determines that the sources described in 19 CFR 351.225(k)(1) are not dispositive, it will further consider the five additional factors set forth at 19 CFR 351.225(k)(2)(i). These factors are: (A) the physical characteristics of the merchandise; (B) the expectations of the ultimate purchasers; (C) the ultimate use of the product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed. In the event of a conflict among these factors, the physical characteristics of the merchandise will normally be allotted greater weight than other factors.[29]

Commerce's scope rulings are made on a case-by-case basis, and may be applied on a producer-specific, exporter-specific, or importer-specific basis, or some combination thereof, or to all products from the same country with the same relevant physical characteristics as the

---

[26] *See* 19 CFR 351.225(k)(1)(i).
[27] *See* 19 CFR 351.225(k)(1)(ii).
[28] *See* 19 CFR 351.225(h).
[29] *See* 19 CFR 351.225(k)(2)(ii).

product at issue, on a country-wide basis, regardless of the producer, exporter, or importer of the products.[30]

### B.  Analysis

First, the Scope Application states that calcium glycinate "is a precursor used in the manufacture of glycine" and "is also used as a dietary supplement for humans and animals, as a pharmaceutical intermediate, and in cosmetic applications."[31]  It is "a fine, free flowing spray dried {…} white or off-white powder."[32]  Further, "{c}alcium glycinate is the result of the chelation, {a type of bonding of ions and molecules} of calcium and glycine."[33]

Additionally, a 2008 CBP tariff classification determination included in the Scope Application states that "{c}alcium {g}lycinate, also known as {g}lycine, {c}alcium salt is an amino acid salt, indicated for use of pharmaceutical intermediate."[34]  Similarly, a 2013 CBP tariff classification determination stated that "{c}alcium {g}lycinate is an amino acid salt, indicated for use of pharmaceutical intermediate."[35]  The *ITC Report* provides that "{g}lycine is typically sold as United States Pharmacopeial Convention ('USP') grade or technical grade."[36]  Further, the *ITC Report* describes glycine as a "nonessential amino acid that is…most commonly sold in its dry form as a white, free flowing powder."[37]

Accordingly, based on the descriptions of calcium glycinate in the Scope Application, in the CBP determinations, and the descriptions of glycine in the *ITC Report*, we find that calcium glycinate and glycine are both amino acids in the form of "free flowing white powder."

---

[30] *See* 19 CFR 351.225(m)(1).
[31] *See* Scope Application at 3.
[32] *Id.* at Exhibit 3 (pages 2 and 4).
[33] *Id.* at 4.
[34] *Id.* at Exhibit 1 (page 1).
[35] *Id.* at Exhibit 1 (page 3).
[36] *See ITC Report* at I-13.
[37] *Id.*

Deer Park states that calcium glycinate is "a precursor in the production of glycine {and} is deconstructed to form glycine."[38]  Further, according to Deer Park, the specific process of producing glycine from calcium glycinate, "requires that the calcium glycinate first be dissolved in water.  The resulting solution is then treated with sulfuric acid to form glycine, which remains in solution, and the precipitate calcium sulfate.  The calcium sulfate is filtered from the solution.  The remaining filtrate is then crystallized to recover the glycine as wet cake and dried."[39]

Similarly, as the *ITC Report* explains, "{g}lycine is produced {from sodium glycinate} when an acid, such as sulfuric acid, is mixed with sodium glycinate.  The glycine solution then goes through one or more crystallization and filtration steps to produce a pure white glycine powder."[40]  Sodium glycinate and glycine slurry are explicitly listed in the scope as forms of "glycine at any purity level or grade."[41]  Commerce notes that the glycine slurry is identified as glycine in a non-crystallized form by the *ITC Report*.[42]  Further, the *ITC Report* concluded that sodium glycinate and glycine slurry are not distinct domestic like products from glycine.[43]  Both calcium glycinate and sodium glycinate are mixed with a sulfuric acid to form a glycine solution which is then filtered and crystallized to produce dried glycine.[44]  Commerce finds that calcium glycinate undergoes substantially the same process as sodium glycinate to produce glycine. Additionally, Deer Park provided a declaration by a chemical engineer involved in the production of glycine for more than 30 years, stating that the "{m}anufacturing equipment necessary to produce glycine from {monochloroacetic acid (MCAA)} and sodium glycinate, *i.e.*,

---

[38] *See* Scope Application at 4.
[39] *Id*. at Exhibit 6.
[40] *See ITC Report* at I-16.
[41] *See Orders*.
[42] *See ITC Report* at IV-1.
[43] *See ITC Report* at I-17.
[44] *Id*. at I-16; *see also* Scope Application at Exhibit 6.

8

reactor, crystallizer, filters and dryer, are the same manufacturing equipment needed to manufacture glycine from calcium glycinate."[45]

As discussed, sodium glycinate is a form of "crude or technical glycine," and the ITC found that sodium glycinate is not a distinct domestic product from glycine slurry, which is also covered by the scope as a form of "crude or technical glycine." Commerce finds that calcium glycinate undergoes substantially the same process as sodium glycinate to produce dried, crystallized glycine and the production of both products uses the same manufacturing equipment in that process.

Based on Commerce's findings that calcium glycinate is substantially similar to: (1) glycine, as an amino acid and a white, free flowing powder, and (2) sodium glycinate, based on their shared production process and necessary manufacturing equipment to yield dried, crystalline glycine, we determine that calcium glycinate is, like sodium glycinate, a form of "crude or technical" glycine. Because our analysis of the scope language and 19 CFR 351.225(k)(1) sources is dispositive, for this redetermination, we continue to find it unnecessary to consider the additional factors specified in 19 CFR 351.225(k)(2).

### IV. INTERESTED PARTY COMMENTS ON DRAFT REDETERMINATION

As stated above, on June 18, 2025, we released the Draft Results of Redetermination and invited all interested parties to comment.[46] On June 25, 2025, Deer Park submitted comments on the Draft Results of Redetermination which are addressed below.[47]

---

[45] *Id*. at Exhibit 6.
[46] *See* Draft Results of Redetermination at 9.
[47] *See* Deer Park's Comments on Draft Results of Remand Redetermination.

9

**Comment 1:  Whether Commerce's Redetermination is Consistent with the Court's Opinion and Remand**

*Deer Park's Comments:*

The following is a verbatim summary of arguments submitted by Deer Park (internal footnotes omitted).  For further details, *see* Deer Park's Comments on Draft Results of Remand Redetermination at 3-7.

> Commerce should find in the final remand redetermination that calcium glycinate is covered by the scope of the Orders because: (1) it is crude or technical-grade glycine; and (2) it is a precursor of dried crystalline glycine. While we fully support Commerce's conclusion that "calcium glycinate is, like sodium glycinate, a form of 'crude or technical' glycine," it is incomplete and fails to fully address the opinion and remand instructions of the U.S. Court of International Trade (CIT or the "Court"), which found, inter alia, that Commerce disregarded the record evidence indicating that calcium glycinate is also a precursor of dried crystalline glycine. The U.S. International Trade Commission ("USITC") clearly recognized in its final report that sodium glycinate is a precursor of dried crystalline glycine. Commerce acknowledged on remand that "calcium glycinate undergoes substantially the same process as sodium glycinate to produce glycine." As such, the record evidence indicates here that calcium glycinate is also a precursor of dried crystalline glycine.
>
> Failing to recognize this important nuance potentially creates significant tension between the second and third sentences of the scope language and confusion concerning Commerce's interpretation of the term "precursor" used in the third sentence of the scope language.  A precursor, as in the case of calcium glycinate and sodium glycinate, can be both crude and/or technical-grade glycine and a precursor of dried crystalline glycine, even if it must go through multiple processing steps before it becomes dried crystalline glycine. To resolve this tension and avoid further confusion regarding the scope language, Commerce should recognize in its final remand redetermination that calcium glycinate is both crude and/or technical-grade glycine and a precursor of dried crystalline glycine.

**Commerce's Position:**

Deer Park argues that though it "fully agrees" with Commerce's conclusion in the Draft Results of Redetermination that calcium glycinate is covered by the scope of the *Orders* as a form of "crude or technical glycine," Commerce failed to address an interpretive failure

10

identified in the *Remand Order*.[48] In these final results of redetermination, we continue to find that calcium glycinate is subject to the scope of the *Orders* as a form of "crude or technical" glycine. While we disagree that the *Remand Order* additionally requires Commerce to determine whether calcium glycinate is subject to the scope of the *Orders* as a precursor of dried crystalline glycine processed in a third country, we have analyzed record information and the *ITC Report* and find that calcium glycinate, like sodium glycinate, is also a precursor of dried crystalline glycine.

As explained above, consistent with the *Remand Order*, we: (1) analyzed whether calcium glycinate is a form of crude or technical glycine under the first two sentences of the scope; and (2) considered information which "might undermine or complicate" Commerce's Scope Ruling,[49] including information in the Scope Application and the *ITC Report*.[50] In doing so, we have found calcium glycinate is, like sodium glycinate, a form of "crude or technical" glycine. Additionally, we find that calcium glycinate is also a precursor of dried crystalline glycine, as explained below. Deer Park agrees that calcium glycinate is subject to the *Orders* under the first and second sentences of the scope:

> The merchandise covered by these Orders is glycine at any purity level or grade. This includes glycine of all purity levels, which covers all forms of crude or technical glycine including, but not limited to, sodium glycinate, glycine slurry and any other forms of amino acetic acid or glycine.[51]

Deer Park argues that by declining to find calcium glycinate subject to the *Orders* as a precursor of dried crystalline glycine, "Commerce's conclusion creates a significant tension between the second and third sentences of the scope language—treating the term 'crude or

---

[48] *See* Deer Park's Comments on Draft Results of Remand Redetermination at 3.
[49] *See Remand Order* at 29.
[50] *See Remand Order* at 34-36.
[51] *See Glycine AD Order*, 84 FR at 29172; *see also Glycine from Thailand AD Order*, 84 FR at 55913; and *Glycine CVD Order*, 84 FR at 29174.

11

technical glycine' as separate and distinct from the term 'precursors of dried crystalline glycine' used in the third sentence of the scope language—and unreasonably restricts the scope of the Orders."[52] In these final results of redetermination, record evidence and other 19 CFR 351.225(k)(1) sources support finding calcium glycinate to be a precursor of glycine. Specifically, the *ITC Report* states, "{t}he scope of this proceeding also covers precursors of dried crystalline glycine, including, but not limited to, glycine slurry (*i.e.*, glycine in a non-crystallized form), sodium glycinate and a non-reacted ammonia-monochloroacetic or chloroacetic acid mix."[53] As explained above, sodium glycinate (which, according to the *ITC Report* is a precursor of dried crystalline glycine) undergoes substantially the same process as calcium glycinate to produce dried crystalline glycine. Specifically, both calcium glycinate and sodium glycinate are mixed with a sulfuric acid to form a glycine solution which is then filtered and crystallized to produce dried glycine.[54] Given both sodium glycinate and calcium glycinate undergo substantially the same production process to produce dried crystalline glycine, we find that in this respect calcium glycinate is also a precursor of dried crystalline glycine.

That said, we find that it is unnecessary to further analyze whether calcium glycinate is subject to the *Orders* under a different provision of the scope language referring to precursors "*processed in a third country*."[55] As stated in the Draft Results of Redetermination, these final results apply to all calcium glycinate regardless of the producer, exporter, or importer.

Moreover, Commerce's analysis complied with the Court's directive to analyze information which "might complicate or undermine" our prior Scope Ruling finding calcium glycinate not subject to the *Orders* and to analyze calcium glycinate's similarity to in-scope

---

[52] *See* Deer Park's Comments on Draft Results of Remand Redetermination at 5.
[53] *See ITC Report* at IV-I, n. 4.
[54] *Id*. at I-16; *see also* Scope Application at Exhibit 6.
[55] *Id*. (emphasis added).

12

chemical substances, such as sodium glycinate. Commerce's analysis adequately explains the basis for finding calcium glycinate subject to the *Orders* and addresses the interpretive failures identified in the *Remand Order*.

## V.    FINAL RESULTS OF REDETERMINATION

For these final results of redetermination, we continue to find that calcium glycinate is subject to the scope of the *Orders* under 19 CFR 351.225(k)(1). Moreover, pursuant to 19 CFR 351.225(m)(1)(ii), we continue to find this scope ruling applicable to all calcium glycinate. Upon a final and conclusive decision in this litigation, as appropriate, Commerce will issue appropriate instructions to CBP consistent with these final results of redetermination.

7/9/2025

X _____

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties
 of the Assistant Secretary for Enforcement and Compliance

13